# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

NCR CORPORATION,       )
           )
           Plaintiff,     )
           )
           v.           )      C.A. No. 11-481-NLH-AMD
           )
BB 2009 TRUST,        )
           )
           Defendant.   )

## PLAINTIFF NCR'S OPPOSITION TO
## DEFENDANT BB 2009 TRUST'S MOTION TO DISMISS

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Melanie K. Sharp (No. 2501)
Erika R. Caesar (No. 5143)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Phone: (302) 571-6681

*Attorneys for Plaintiff NCR Corporation*

Of Counsel:

LATHAM & WATKINS LLP
James E. Brandt
885 Third Avenue, Suite 1000
New York, NY 10022-4834
Phone: (212) 906-1200

Maximilian A. Grant
Michael David
555 Eleventh Street, Suite 1000
Washington, DC 20004
Phone: (202) 637-2200

July 8, 2011

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................................................... ii

INTRODUCTION ...........................................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ......................................................................2

FACTUAL BACKGROUND ..........................................................................................................2

ARGUMENT ...................................................................................................................................7

     I.      BLOCKBUSTER IS NOT A REQUIRED PARTY TO THIS ACTION ...............9

          A.     Declaratory Relief Is Compelled By The Four Corners Of The Trademark License Agreement ................................................................9

          B.     This Court Can Afford Complete Relief ...................................................11

          C.     Proceeding Without Blockbuster Does Not Expose The Trust To Inconsistent Obligations ....................................................................14

     II.     BLOCKBUSTER IS NOT AN INDISPENSIBLE PARTY UNDER RULE 19(b) ....................................................................................................15

CONCLUSION ..............................................................................................................................19

# TABLE OF AUTHORITIES

## CASES

*Angst v. Royal Maccabees Life Insurance Co.*,
    77 F.3d 701 (3d Cir. 1996) ................................................................................13

*Bank of America National Trust & Savings Association v. Hotel Rittenhouse Associates*,
    844 F.2d 1050 (3d. Cir. 1988) ......................................................................13, 18

*Council of Dorset Condominium Apartments v. Gordon*,
    801 A.2d 1 (Del. 2002) ................................................................................10

*Culinary Service of Delaware Valley, Inc. v. Borough of Yardley, Pa.*,
    385 Fed. Appx. 135 (3d Cir. 2010) ........................................................15

*Cushman & Wakefield, Inc. v. Backos*,
    No. 91-0498, 1991 U.S. Dist. LEXIS 11906 (E.D. Pa. Aug. 21, 1991) ...............17

*Dainippon Screen Manufacturing Co. v. CFMT, Inc.*,
    142 F.3d 1266 (Fed. Cir. 1998) ................................................................17

*Gardiner v. Virgin Islands Water & Power Authority*,
    145 F.3d 635 (3d Cir. 1998) ....................................................................16

*Helzberg's Diamond Shops v. Valley West Des Moines Shopping Center*,
    564 F.2d 816 (8th Cir. 1977) ....................................................................17

*In re Grossman's Inc.*,
    607 F.3d 114 (3d Cir. 2010) ....................................................................18

*JA Apparel Corp. v. Abboud*,
    568 F.3d 390 (2d Cir. 2009) ....................................................................10

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*,
    11 F.3d 399 (3d. Cir. 1993) ...................................................................8, 15

*Johnson & Johnson v. Coopervision*,
    720 F. Supp. 1116 (D. Del. 1989) ............................................................17

*Kass v. Kass*,
    696 N.E.2d 174 (N.Y. 1998) ....................................................................11

*Northwestern National Insurance Co v. Esmark, Inc.*,
    672 A.2d 41 (Del. 1996) ..........................................................................10

*OSI System, Inc. v. Instrumentarium Corp.*,
   892 A.2d 1086 (Del. Ch. 2006)................................................................................11

*Pioneer Commercial Funding Corp. v. United Airlines, Inc.*,
   122 B.R. 871 (Bankr. S.D.N.Y. 1991) ............................................................13, 14

*Sever v. Glickman*,
   298 F. Supp. 2d 267 (D. Conn. 2004)........................................................................14

## STATUTES AND RULES

Fed. R. Civ. P. 12(c) ................................................................................2, 9, 11

Fed. R. Civ. P. 19 ....................................................................................8, 16

Fed. R. Civ. P. 45 ......................................................................................17

Del. Code Ann. tit. 12, § 3801(g)(1).............................................................14

## INTRODUCTION

The dispute before this Court concerns the right of Plaintiff NCR Corporation ("NCR" or "Plaintiff") to continue to use the trademark it licensed under the terms of the Trademark Usage License. (*See* Cmplt.) NCR and Defendant BB 2009 Trust (the "Trust" or "Defendant"), are the only parties to the Trademark Usage License, and this dispute can be resolved based on nothing more than the pleadings and the four corners of the exhibits attached to the Trust's Motion to Dismiss ("Motion").[1]

Two and a half years ago, Blockbuster, Inc. ("Blockbuster") and NCR undertook a series of actions through which Blockbuster, NCR, and the Wilmington Trust Company created Defendant BB 2009 Trust to accept the assignment of the entire interest of the Blockbuster Express trademark and license it to NCR for use with kiosks that rent and sell DVDs. The Trust was created to safeguard and protect NCR's license rights in the case of a subsequent Blockbuster insolvency "and to induce NCR to make the investment that it will make in reliance of such License." (Ex. C of Hessler Decl. at 1.) NCR and the Trust are the only parties to the Trademark Usage License. NCR, "in reliance" on its Trademark Usage License with BB 2009 Trust, has invested heavily, creating a network of thousands of branded kiosks in fulfillment of its contractual obligations.

Blockbuster is currently in a Chapter 11 bankruptcy. It has sold its interest in Defendant BB 2009 Trust to Dish Network Corporation ("DISH") (along with most of its other rights and assets). Now Defendant BB 2009 Trust seeks to terminate NCR's Trademark Usage License in violation of its express terms (presumably so that DISH, acting in the wings, can

---

[1] The relevant documents are attached to the Declaration of Paul Hessler, filed with Defendant's Motion. Plaintiff NCR refers herein to the exhibits attached to Mr. Hessler's June 21, 2011 declaration.

unlawfully obtain rights in the licensed trademark). That is the subject of this lawsuit: whether BB 2009 Trust's termination of the Trademark Usage License with NCR is permitted under its terms. Despite the Trust's attempt to confuse and complicate the issue, this Court can resolve that narrow dispute – whether the terms of the Trademark Usage License have been honored or violated – by looking solely at the pleadings and the face of the documents attached to the Trust's instant Motion. *See* FED. R. CIV. P. 12(c). DISH's participation is not required and DISH's predecessor-in-interest, Blockbuster, has no ongoing interest whatsoever in the trademark licensed by BB 2009 Trust to NCR.

BB 2009 Trust's Motion to dismiss for failure to join DISH's predecessor-in-interest, Blockbuster, is a disingenuous ruse, intended to improperly force into the bankruptcy court litigation regarding the trademark rights owned by the Trust and licensed to NCR, thereby evading the very purpose for which the Trust was created. The Motion should be denied.

## NATURE AND STAGE OF THE PROCEEDINGS

NCR adopts Defendant's description of the proceedings. (Mot. at 2.)

## FACTUAL BACKGROUND

Two and a half years ago, NCR was looking for a way to sell a new product line, kiosks that would rent and sell DVDs. The kiosk product line presented an expansion of NCR's then existing self-service automation product line. Blockbuster was a prospective customer, having a well-known brand name in the movie rental industry. The Blockbuster brand name presented an opportunity to get customer recognition for the kiosks necessary to enter the market and to compete with the growing number of other DVD rental kiosks. However, Blockbuster's "bricks and mortar" stores were not doing well, and it became apparent that Blockbuster would not invest the capital needed to purchase or operate a network of vending kiosks. Vending kiosks

are expensive, and to deploy them in number would require significant investment of up-front capital. Blockbuster lacked capital, was in financial trouble, and it was common knowledge (as expressly contemplated by NCR and Blockbuster) that a future insolvency or reorganization under Chapter 11 of the U.S. Bankruptcy Code was a very real possibility.

NCR was and remains in the business of developing, marketing and operating self-service and vending kiosks.[2] Two and a half years ago, NCR was willing to consider owning the kiosks itself and operating them under a Blockbuster brand. But NCR would not invest the significant capital required to make and deploy the number of kiosks needed to compete with existing market players absent a commitment that NCR's right to use the Blockbuster brand would be safeguarded and protected, and its use of the Blockbuster brand would not be impeded – and the kiosk investment lost – if Blockbuster's looming insolvency came to pass.

To achieve these business objectives, a new trademark, "Blockbuster Express" was formed specifically for the DVD vending kiosk field of use. Three agreements were created and executed to safeguard and protect NCR's right to use the Blockbuster Express trademark from any Blockbuster insolvency and to expressly "induce NCR to make the investment that it will make in reliance of such License." *First*, Blockbuster and NCR executed an Alliance Agreement, dated January 23, 2009, which set out their objectives and included, *inter alia*, express terms barring Blockbuster and its affiliates from competing with NCR in the DVD vending kiosk business and promising not to enter into similar agreements with others or permit the Blockbuster trademark to be used competitively against NCR. (Ex. B of Hessler Decl. at 1-2, 13.) The Alliance Agreement attached a form of Trade Name Usage License as Exhibit A,

---

[2]    NCR made a business decision to shift from a sales model to an operator model after its initial discussions with Blockbuster.

which contemplated creation of a Delaware Statutory Trust, transfer of Blockbuster's trademark rights in "Blockbuster Express" to the trust, and subsequent licensing of those trademark rights by the trust to NCR.

*Second*, NCR, Blockbuster and the Wilmington Trust Company ("Trustee") executed a Trust Agreement, dated February 27, 2009, which created Defendant BB 2009 Trust. (Ex. C of Hessler Decl.) The Trust Agreement, which is governed by Delaware law, (*id.* at 15), conveyed "all right to the [licensed] Trademarks, along with the related goodwill, to [BB 2009 Trust] for the purpose of the Trust licensing the Trademarks to NCR." (*Id.* at 1.) Blockbuster expressly represented that it

> desires to hereby create such trust as a Delaware Statutory Trust pursuant to the Delaware Statutory Trust Act, 12 Del. C. § 3801 et seq. [] and contribute to the Trust Estate thereto subject to the terms and condition of the Operative Documents and this Agreement *for the purpose of safeguard* [sic] *and protecting the Trademarks and preserving the rights of NCR to use the Trademarks under the terms of the Trademark Usage License and to induce NCR to make the investment that it will make in reliance of such License.*

(*Id.*)[3] The Trust Agreement expressly contemplated that a Blockbuster bankruptcy "shall not result in termination or dissolution of the Trust," (*Id.* at 9), and further states:

> *An Event of Insolvency of* [*Blockbuster*] *shall not* (a) operate to terminate this Agreement or the Trust, (b) entitle [Blockbuster's] legal representatives to claim an accounting or to take any action or proceeding in any court for a partition or winding up of all or any part of the Trust or Trust Estate[4], nor (c) otherwise *affect the rights, obligations and liabilities of the parties hereto*.

(*Id.* at 13.) The Trust Agreement further states:

> *No transfer*, by operation of law or otherwise, *of the right, title and interest of the Trustor in and to the Trust Estate or the Trusts hereunder* … *shall operate to* terminate this Agreement or the trusts hereunder or *entitle any successor* or transferee *of Trustor* to an accounting or *to the transfer to it of legal title to any part of the Trust Estate*."

---

[3] All emphasis added unless otherwise noted.

[4] "'Trust Estate' means all estate, right, title and interest of the Trust in and to the Trademarks … ." (Ex. C of Hessler Decl. at 3.)

(*Id.* at 14.)

Third, Plaintiff NCR and Defendant BB 2009 Trust executed a Trademark Usage License, dated March 2, 2009. (Ex. D of Hessler Decl.) The Trademark Usage License, which is governed by New York law, (*id.* at 8), provides that Defendant BB 2009 Trust (and only the Trust) may terminate NCR's license, but only after reasonable notice and an opportunity for NCR to cure any alleged problem with NCR's use of the trademark, and only for specified reasons:

> [BB 2009 Trust] reserves the right to approve the final form of the usage of the Licensed Mark and may, at any time, withdraw its approval and terminate this license, ***effective after reasonable notice to NCR and opportunity to cure***, if Licensor receives instruction from Blockbuster, that **<u>use</u> of the Licensed Marks (either in the manner of use or in the distribution of the Materials) is or becomes inappropriate** or negatively impacts the goodwill associated with the Licensed Marks … .

(*Id.* at 5.)

As contemplated by the Trust Agreement, Blockbuster became insolvent and transferred "all rights, title and interest" in BB 2009 Trust to DISH under an asset purchase and sale agreement, and the Blockbuster assets were transferred to a wholly-owned DISH subsidiary, along with Blockbuster intellectual property that was not licensed to BB 2009 Trust. (*See* Ex. H of Hessler Decl. at 1 (representing that Blockbuster "transfer[red] substantially all of Blockbuster's assets (including **all its rights, title and interest in the BB 2009 Trust**) to … [an] assignee of DISH Network Corporation").)[5] Having negotiated for the disposition of Blockbuster's assets and understanding that valuable trademark rights had been properly

---

[5] The schedules relating to intellectual property transferred, referenced at page v of the Amended and Restated Asset Purchase and Sale Agreement, were not included in Defendant's submissions. (*See* Ex. G of Hessler Decl.)

conveyed to BB 2009 Trust, DISH undertook a series of actions intended to frustrate the Trust's very purpose and unlawfully strip NCR of its license rights.

On May 11, 2011, Blockbuster sent a letter to BB 2009 Trust's Trustee, informing the Trustee that Blockbuster "has directed NCR to discontinue the use of the Marks pursuant to the term of an Alliance Agreement between them."  (Ex. H of Hessler Decl. at 1.)  The May 11 letter stated that Blockbuster "has terminated NCR's license to use the Marks on the ground that, in light of the bankruptcy and related sale of assets to DISH, "NCR's use of the Marks has [allegedly] become inappropriate."  (*Id*.)  Blockbuster further "direct[ed] the Trustee to cause BB 2009 Trust to withdraw its approval and terminate the license granted under the Trademark Usage License … ."  (*Id*.)  Blockbuster invoked Section 4.08(a) of the Trust Agreement, which provides only that Blockbuster is responsible for directing and paying for any actions "to enforce the rights of the Trust as Licensor" under the Trademark Usage License between the Trust and NCR.  (*Id*. at 1-2; *see also* Ex. C of Hessler Decl. at 10.)

On May 25, 2011, Blockbuster and DISH[6] sent a "Joint Instruction Letter" to the Trust.  (Ex. I of Hessler Decl.)  The Joint Instruction Letter repeated Blockbuster's unsupported assertion that NCR's use of the licensed trademark owned by the Trust allegedly had become "inappropriate," but again failed to allege that NCR had used the trademark in any way not contemplated by the Trademark Usage License.  (*Id*.; *see also* Ex. D of Hessler Decl at 5 (NCR's "use … either in the manner of use or in the distribution of the Materials" is what must become "inappropriate")).)  Instead – turning the very purpose for which BB 2009 Trust was created and the Trademark Usage License was executed on its head – the Joint Instruction Letter made plain

_____

[6]   Defendant's Motion refers to a "new Blockbuster," which it explains is Blockbuster L.L.C., an assignee of DISH and DISH's wholly-owned subsidiary.  "New Blockbuster" is hereafter referred to also as "DISH."

that the sole basis for Blockbuster and DISH's effort to instruct BB 2009 Trust to terminate

NCR's license was Blockbuster's insolvency and the associated sale of assets to DISH (*i.e.,*

assets not conveyed to the Trust):

> Blockbuster has determined in light of the [asset sale to DISH] and Blockbuster's intent to reject the Alliance Agreement … that ***NCR's use of the Marks has become inappropriate (within the meaning of Section 6(a) of the License),*** Blockbuster has further determined that such inappropriate use is incurable and as a result that it is exercising is instruction rights to the Trust under Section 6(a) of the License by the execution and delivery of this Joint Instruction Letter.

(*Id.* at 1.)

On May 26, 2011, the Trust sent NCR a letter entitled "Notice of Withdrawal of

Approval and Termination of License" (the "Trust Notice Letter"). (Ex. J of Hessler Decl.) The

Trust Notice Letter purported to terminate the Trademark Usage License as directed by

Blockbuster, Inc. and DISH. (*Id.*) The Trust failed to provide NCR with its express contractual

rights to reasonable notice and an opportunity to cure any allegedly inappropriate use, as

required under the Trademark Usage License between the Trust and NCR. (*Id.*; *see* Ex. D of

Hessler Decl. at 2.)

The next day, May 27, 2011, NCR filed this action seeking a declaration of its

rights under the Trademark Usage License between itself and BB 2009 Trust, namely that (I)

NCR's use of the trademark is not "inappropriate" and there is no basis for terminating the

license, and (II) that NCR's continued use of the trademark is licensed and lawful.

## ARGUMENT

BB 2009 Trust contends that Blockbuster (distinct from DISH, referred to as

"New Blockbuster" in Defendant's Motion) must be joined as an indispensible party to a

straightforward contract dispute between NCR and the Trust over whether NCR's use of the

licensed trademark was "inappropriate" under the terms of the Trademark Usage License.

Defendant makes this argument in spite of the fact that the insolvent Blockbuster entity has transferred ownership of any rights in the Trust that may arguably arise. BB 2009 Trust further contends that because Blockbuster is in the midst of a Chapter 11 proceeding and subject to an automatic stay, NCR's declaratory judgment action against the Trust must be dismissed and NCR left without legal recourse for the Trust's unlawful termination of NCR's license rights. This, BB 2009 Trust contends, is the result required by "equity."

Despite the Trust's attempt to confuse and complicate the issue, the dispute before this Court concerns only whether the Trust lawfully terminated NCR's license under the terms of the Trademark Usage License between those two parties. It is undisputed that the Trust failed to provide NCR with reasonable notice or an opportunity to cure any allegedly inappropriate use, as required under the express terms of that agreement. Nothing more is needed to resolve this dispute – save the Trust's answer to NCR's complaint.

In any event, dismissal is inappropriate here. Dismissal for failure to join a party is appropriate only if (1) the absent party is a "necessary party" under Rule 19(a) who cannot feasibly be joined, and (2) "equity and good conscience" demand that the action cannot proceed without that party. FED. R. CIV. P. 19(a), (b); *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,* 11 F.3d 399, 406 (3d. Cir. 1993). Because a declaration as to NCR's rights under the Trademark Licensing Agreement would afford all the relief NCR seeks and would not prejudice Blockbuster's interests, Blockbuster is not a necessary party to this action. As for equity and good conscience, the actions at issue appear to form the basis for a potential fraud claim, not dismissal of NCR's action seeking clarification of its rights under Trademark Usage License – an agreement to which neither Blockbuster nor DISH is a party. The very purpose of creating BB 2009 Trust was to "safeguard and protect[] the Trademarks *and preserv*[*e*] *the rights of NCR to*

*use the Trademarks under the terms of the Trademark Usage License*" in the event of a

Blockbuster insolvency.  (Ex. C of Hessler Decl. at 1.)  Defendant's Motion should be denied.

## I.     BLOCKBUSTER IS NOT A REQUIRED PARTY TO THIS ACTION

### A.     Declaratory Relief Is Compelled By The Four Corners Of The Trademark License Agreement

Far from requiring additional parties or discovery of some as-yet unidentified

"evidence" that "might" be in Blockbuster's possession, this case is ripe for resolution under

Rule 12(c), and NCR will in due course file that motion.  The facts averred in the complaint and

the undisputedly authentic documents attached to Defendant's Motion together establish that the

Trust is in breach of the Trademark Usage License in at least two respects, and that NCR will be

entitled to judgment on the pleadings.  FED. R. CIV. P. 12(c).

*First*, the Trademark Usage License provides that NCR's license may not be

terminated on the ground that NCR has "inappropriate[ly] use[d]" the Trademark without

"reasonable notice to NCR and opportunity to cure" the alleged inappropriate use.  (Ex. D of

Hessler Decl. at 2.)  Because the facts averred in the complaint and the undisputedly authentic

documents attached to Defendant's Motion establish that such notice and opportunity were not

provided to NCR, that should end the matter.

*Second*, the assertion that NCR's allegedly "inappropriate *use*" of the Trademark

is "incurabl[e]" makes plain that the circumstances relied on by the Trust do not and cannot

constitute "inappropriate use" within the meaning of the Trademark Usage License.  The sole

basis for the Trust's attempt to terminate NCR's license is Blockbuster's insolvency and the

associated sale of assets to DISH.  (Ex. J to Hessler Decl.; Ex. I to Hessler Decl. at 1

("Blockbuster has determined in light of the [asset sale to DISH] and Blockbuster's intent to

reject the Alliance Agreement … that NCR's use of the Marks has become inappropriate (within

the meaning of Section 6(a) of the License) [and] that such inappropriate use is incurable"); *id.* at 2 (representing to Trust that termination is "permitted by" and "not inconsistent with" the Trademark Usage License).)

Read in context, however, the phrase "inappropriate use" in the Trademark Usage License unambiguously refers to actions taken by NCR in connection with *NCR's use* of the licensed trademark. *See Northwestern Nat'l Ins Co v. Esmark, Inc.* 672 A.2d 41, 32 (Del. 1996) (words and phrases must be read in context of the contract as a whole); *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 405 (2d Cir. 2009) (same). NCR's unqualified contractual rights to reasonable notice and an opportunity to cure any allegedly "inappropriate *use*" would be rendered meaningless if the phrase were defined to encompass circumstances outside of NCR's control, such as DISH's decision to purchase Blockbuster's assets. "[C]ourt[s] must interpret contractual provisions in a way that gives effect to every term of the instrument, and that, if possible, reconciles all of the provisions of the instrument when read as a whole." *Council of Dorset Condominium Apts. v. Gordon*, 801 A.2d 1, 5 (Del. 2002); *see also JA Apparel Corp.*, 568 F.3d at 405 (citing *Corhill Corp. v. S.D. Plants, Inc.*, 176 N.E.2d 37, 38 (N.Y. 1961)). Defendant's proposed interpretation is irreconcilable with the plain language of the Trademark Usage License.

The plain reading of the word "use" is also consistent with the specifically enumerated authorized and unauthorized "uses" of the trademark identified elsewhere in the Trademark Usage License between the Trust and NCR:

> ➢ "The license granted to NCR is limited to ***use of*** the Licensed Marks and may, ***upon reasonable notice and opportunity to cure***, be terminated in the event of any changes to the Licensed Marks which are not specifically authorized in writing by Licensor." (Ex. D to Hessler Decl. at 2);

> ➢ "NCR's authorized ***use of*** the Licensed Marks shall be limited solely in connection with the Business …." (*id.*);

➢ "NCR shall not **utilize** the Licensed Marks in any manner that would diminish their value or harm the reputation of Licensor or Blockbuster and will apply the Licensed Marks only on Vending Kiosks that meet the quality standard as specified in the Alliance Agreement." (*Id.* at 4); and

➢ "Unless otherwise provided by Licensor, NCR's authorized **use of** the Licensed Marks must be accompanied by the following trademark legend: [omitted]." (*Id.*)

The truth is, that the only thing allegedly "inappropriate" about NCR's "use" of the trademark it licensed from the Trust is that Blockbuster and/or DISH now wish the trademark had not been lawfully conveyed to BB 2009 Trust and lawfully licensed to NCR. But seller's remorse cannot transform NCR's use under the Trademark Usage License from fully compliant to incurably inappropriate on the Trust's whim. And the Trust's contrary view is foreclosed by the four corners of the Trademark Usage License and properly may be rejected by this Court as a matter of law. *OSI Sys., Inc. v. Instrumentarium Corp.*, 892 A.2d 1086 (Del. Ch. 2006) ("Under Delaware law, the 'proper interpretation of language in a contract … is treated as a question of law …,' and 'judgment on the pleadings ... is a proper framework for enforcing unambiguous contracts.'") (quoting *Pellaton v. Bank of New York*, 592 A.2d 473, 478 (Del. 1991)); *see also Kass v. Kass*, 696 N.E.2d 174, 180 (N.Y. 1998) (whether an agreement is unambiguous is a question of law for the court, "determined by looking within the four corners of the document, not to outside sources"); Fed. R. Civ. P. 12(c).

**B.      This Court Can Afford Complete Relief**

NCR seeks a "declaration as to its rights and obligations with respect to the [Trademark Usage] License." (Cmplt. ¶ 23.) BB 2009 Trust has all rights, title, and interest in the trademark at issue, and only NCR and the Trust are parties to the Trademark Usage License. Consequently, the Court may afford NCR complete relief. Defendant's contrary argument is based on two false premises, one factual and one legal: (1) that Blockbuster has "contractual authority" to terminate the license; and (2) that the "possibility" of future litigation between or

among Blockbuster and the parties to this action means that this Court is incapable of granting "complete relief" to NCR. Defendant is wrong on both counts.

Blockbuster's purported "contractual authority" to terminate the Trademark Usage License between the Defendant and NCR is nothing of the sort, as Defendant's argument makes plain. Defendant contends that even if "the Trust has no basis for terminating the License," "Blockbuster would still be contractually entitled pursuant to Section 6(a) of the License to withdraw its approval and terminate the License." (Mot. at 6-7.) But Section 6(a) expressly provides that only *the Trust – **not Blockbuster** – "may* terminate" NCR's license if NCR's use of the Trademark "is or has become inappropriate." (Ex. D of Hessler Decl. at 2.) There is no basis in the Trademark Usage License for Blockbuster to terminate NCR's rights and nothing in the Trademark Usage License requires the Trust to terminate the Trademark Usage License at Blockbuster's election. Blockbuster's instruction that use of the Trademarks has become "inappropriate" may be a *prerequisite* to the Trust's ability to terminate the license, but the Trust's decision to terminate is its own, albeit only after providing NCR reasonable notice and a fair opportunity to cure. (Ex. D. of Hessler Decl. at 2 ("Licensor … *may* … terminate this license, effective after reasonable notice to NCR and opportunity to cure" if use has become "inappropriate").) Accordingly, it is **the Trust** that must ultimately make a final determination as to whether NCR has cured the allegedly inappropriate use and decide whether to terminate. It is that determination that NCR contests, and this Court can resolve the issue without Blockbuster's (or DISH's) participation.

Next, BB 2009 Trust argues that two other agreements, the Trust Agreement and the Alliance Agreement, provide Blockbuster authority to terminate NCR's license. But Blockbuster's purported authority under contracts not at issue here cannot transform Blockbuster

into a "necessary party" to this action.[7]  As the Trust concedes, its argument on this score devolves into the unsupportable proposition that "the real possibility of continued litigation to settle this issue" is contrary to the spirit of Rule 19(a)(1)(A).  But such speculation does not render Blockbuster a necessary party.  "Complete relief" for purposes of Rule 19 is "determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought."  *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir. 1996).  The prospect of continued litigation over other issues (even if arguably the same or substantially similar) is irrelevant.  Rule 19 requires only that relief granted would be "meaningful," not that it would constitute a "final adjudication[] of all claims."  *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050, 1054 n.5 (3d. Cir. 1988).[8]

Defendant relies on *Pioneer Commercial Funding Corp. v. United Airlines, Inc.*, 122 B.R. 871 (Bankr. S.D.N.Y. 1991), to support its argument that the potential for other

---

[7]  Regardless, Defendant cannot rely in any way on arguments related to Blockbuster's alleged rights under the (unrelated) Alliance Agreement because that agreement was formally rejected on June 24, 2011 in the bankruptcy court where Blockbuster's bankruptcy case is pending – at Blockbuster's request.  (Attached hereto as Exhibit A.)

[8]  In any event, the other contractual provisions on which Blockbuster relies do not support its argument.  Section 4.08 of the Trust Agreement states that the Defendant "shall take direction solely from Trustor with respect to *enforcement* of the Trust's rights under the Trademark Usage License."  (Ex. C of Hessler Decl. at 10.)  That provision grants to the Trustor the authority and obligation to direct any actions taken (such as litigation) to *enforce* the Trademark Usage License; it does not permit the Trustor to *terminate* the Trademark Usage License or direct the Trust's *performance* under its terms.  As the Trust Agreement makes clear, is the "Trustee … on behalf of the Trust" – not Blockbuster – that has the "power and authority, … subject to the terms of this Agreement, to cause the Trust to perform its obligations and duties and exercise its rights … ." (*Id.* at 7.)

Moreover, § 4.06 of the Trust Agreement specifically contemplates the "Bankruptcy of Trustor" (*i.e.*, Blockbuster), and provides that "[i]nvolvency of the Trustor … shall not result in the termination of dissolution of the Trust" and that "upon receipt by the Trustee of notice of an Event of Insolvency … the Trustee shall take direction solely from NCR with respect to any actions or decisions to be taken by the Trustee on behalf of the Trust." (*Id.* at 9.)  That provision cannot be reconciled with the Trust's actions.  Nor does Section 5(e) of the Alliance Agreement bestow on Blockbuster the unilateral right to terminate rights in trademarks subject to the Trademark Usage License, to which Blockbuster is not a party.

litigation requires Blockbuster's joinder under Rule 19(a)(1)(A).  (*See* Mot. at 7.)  Defendant is wrong.  In that case, United Airlines argued that the risk of future litigation rendered a party necessary in light of "the interests … of the parties [and] the public in avoiding repeated lawsuits on the same essential subject matter."  *Id*. at 879.  While acknowledging that the party whose joinder was sought could theoretically bring a separate action involving its entitlement to the same funds at issue in that case, the court nevertheless held that it could grant complete relief as between the present parties and that the third party was not necessary under Rule 19.  *Id.* at 880.  The same result should obtain here.

Repeating its assertion that the Alliance Agreement and Trust Agreement are "relevant to the disposition of this case," (Mot. at 7), Defendant alternatively contends that complete relief cannot be afforded in a contract action where a party to the contract is absent.  As Defendant's own cited authorities make clear, (*see* Mot. at 7, citing *Sever v. Glickman*), an absent party is not "necessary" where it is not "a party to the contract that is the subject of litigation."  *Sever v. Glickman*, 298 F. Supp. 2d 267, 275 (D. Conn. 2004).  This suit involves NCR's rights under the Trademark Usage License, to which Blockbuster is not (and never was) a party.  That agreement – ***by careful design*** – is between only Plaintiff NCR and Defendant BB 2009 Trust, a separate legal entity distinct from Blockbuster that is not in bankruptcy.  *See* Del. Code Ann. tit. 12, § 3801(g)(1).  There is no basis to insert Blockbuster into the dispute between NCR and the Trust, and no basis to require NCR to litigate its contractual rights *vis-à-vis* the Trust in Blockbuster's or DISH's preferred forum.

### C.    Proceeding Without Blockbuster Does Not Expose The Trust To Inconsistent Obligations

Defendant contends that declaratory relief here will expose the Trust to the risk of "inconsistent obligations," because the outcome of this litigation will "affect the propriety of any

future instructions Blockbuster may make to the Trust regarding the Licensed Marks." (Mot. at 7-8.) Again, Defendant is wrong and this flawed argument too rests on the faulty premise that Blockbuster has a right to terminate NCR's rights under the Trademark Usage License, to which Blockbuster is not a party.

Defendant need not fear such conflict. As noted above, nothing in the Trademark Usage License requires the Trust to terminate the Trademark Usage License at Blockbuster's election; rather, Blockbuster's instruction that use of the trademark has become "inappropriate" is a *prerequisite* to the Trust's ability to terminate the license. As explained, however, the final decision to terminate is reserved exclusively for the Trust, predicated on its contractual obligation to first provide NCR reasonable notice and a fair opportunity to cure. (Ex. D. of Hessler Decl. at 2; *see supra*, at 12-13.)

In any event, "an unsubstantiated or speculative risk will not satisfy Rule 19(a)['s] criteria"; rather, "the possibility of exposure to multiple or inconsistent obligations must be real." *Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley, Pa.*, 385 Fed. Appx. 135, 145 (3d Cir. 2010) (citing 7 Wright, Miller & Kane, FEDERAL PRAC. & PROC. § 1604, at 64 (3d ed. 2001)).

> Rule 19 is not triggered by the mere possibility that continuation of this federal case could have some effect on later litigation [with a third party]. That possibility is too speculative to support a holding that [the third party's] interests will, as a practical matter, be impaired or impeded by the continuation of this litigation in its absence.

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 406 (3d Cir. 1993). Here, "[a]ny anticipated reaction by [Blockbuster or DISH] is purely speculative and, therefore, not sufficient to satisfy Rule 19(a)." *Culinary Serv. of DE Valley, Inc.*, 385 Fed. Appx. at 145.

## II. BLOCKBUSTER IS NOT AN INDISPENSIBLE PARTY UNDER RULE 19(b)

BB 2009 Trust contends, that because Blockbuster is a necessary party that is now in the midst of its long-anticipated bankruptcy, "equity" requires dismissal. The Trust contends

that NCR cannot obtain a declaration against the Trust that the Trust has no lawful basis for its purported termination of NCR's rights under the Trademark Usage License – despite the fact that the Trust was created "for the purpose of safeguard[ing] and protecting the Trademarks and preserving the rights of NCR to use the Trademarks under the terms of the Trademark Usage License and to induce NCR to make the investment that it will make in reliance of such License." (Ex. C of Hessler Decl. at 1.)

Even assuming that Blockbuster is a necessary party that cannot be feasibly joined, this action should proceed because dismissal would fly in the face of "equity and good conscience." FED. R. CIV. P. 19(b)(1)-(4). Neither Blockbuster nor Defendant BB 2009 Trust will suffer prejudice from Blockbuster's absence here. Instead, because the Defendant was created specifically to ensure that Blockbuster's bankruptcy would not jeopardize NCR's rights under the Trademark Usage License (and to ensure that a dispute over those rights would not be dragged into a bankruptcy proceeding), the equities weigh strongly in favor of allowing this action to proceed in this Court, with or without Blockbuster.

To support its argument that equity requires dismissal, Defendant contends that there is a risk of prejudice to both Blockbuster and the Trust, because Blockbuster may hold "unique information regarding the Alliance Agreement." (Mot. at 10.) As noted, the Alliance Agreement is not the subject of NCR's complaint. Regardless, Defendant's vague and speculative assertion that Blockbuster allegedly possesses "unique information" potentially relevant to the dispute between NCR and Defendant cannot establish the "prejudice" that Rule 19 requires. *See, e.g., Gardiner v. V.I. Water & Power Auth.*, 145 F.3d 635, 641 (3d Cir. 1998) (rejecting as too vague an assertion that prejudice would result from absent party having "relevant 'internal documents'"). To the extent Defendant believes Blockbuster or DISH possess

relevant and discoverable information, it can obtain it through discovery or otherwise. *See, e.g.*, FED. R. CIV. P. 45.

Next Defendant contends that Blockbuster may be prejudiced by a determination of NCR's rights under the Trademark Usage License because such a determination may implicate Blockbuster's rights and obligations as a party to the Trust Agreement or the Alliance Agreement.[9]  (*See* Mot. at 10.)  But it is well settled that "a person does not become indispensable to an action to determine rights under a contract simply because that person's rights or obligations under an entirely separate contract will be affected by the result of the action." *Helzberg's Diamond Shops v. Valley West Des Moines Shopping Center*, 564 F.2d 816, 820 (8th Cir. 1977) (quoting 3A J. Moore, FEDERAL PRACTICE & PROC. § 19.10, at 2349-50 (1976)); *accord Cushman & Wakefield, Inc. v. Backos*, No. 91-0498, 1991 U.S. Dist. LEXIS 11906, at *4 (E.D. Pa. Aug. 21, 1991) (noting that if discovery reveals that the third-party "'is inextricably linked to the transaction' and indispensable under a Rule 19(b) analysis, the motion to dismiss may be renewed" (quoting *Johnson & Johnson v. Coopervision*, 720 F. Supp. 1116, 1119, 1122-27 (D. Del. 1989))).

Defendant nonetheless contends that a determination regarding the Trust's rights will necessarily implicate Blockbuster.  Defendant is wrong.  First, because the Trust has already manifested a desire to terminate the Trademark Usage License, (*see* Ex. J of Hessler Decl.), Blockbuster's interests are presumably aligned with Defendant's and any arguable prejudice to Blockbuster is therefore considerably mitigated, if not entirely eliminated.  *See Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1272 (Fed. Cir. 1998).  Second, Blockbuster

---

[9]  As noted, *see* note. 7 *supra*, the June 24 rejection of the Alliance Agreement in the bankruptcy proceeding moots any arguments Defendant once made in reliance on that agreement.

previously transferred all "rights, title and interest" in the Trust to DISH, who Defendant promises "will intervene as a matter of right" in this action. (Mot. at 10.)[10] To the extent that Blockbuster's previous "rights, title, and interest" in the Trust are somehow not sufficiently safeguarded by the Defendant, DISH may seek to represent them, just as the Trust has represented it will.

Finally, Defendant's proffered alternative forum of Bankruptcy Court reveals the improper purpose for which its Motion is brought. The Trust was created to safeguard and protect NCR's license rights in the case of a subsequent Blockbuster insolvency "and to induce NCR to make the investment that it will make in reliance of such License." NCR, "in reliance" on its Trademark Usage License with BB 2009 Trust, has fulfilled its contractual obligations and continues to do so. With Blockbuster's interest in Defendant BB 2009 Trust having been sold to DISH, BB 2009 Trust seeks to terminate the NCR's Trademark Usage License in violation of its express terms. Defendant's alternative forum is intended to evade the very purpose for which the Trust was created. Regardless, the availability of an "alternative forum alone cannot transform [an absent party] into an indispensible party." *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050, 1055 (3d Cir. 1988).[11]

---

[10]  The merits of that alleged intervention are not before the Court and NCR will address them if and when DISH (a/k/a New Blockbuster) so moves. Having said that, there seems to be no basis for DISH to intervene, as it appears to have the "'same ultimate objective'" as the Trust. *See Edward v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996) (*en banc*) (there is a "presumption of adequate representation … when the would-be intervenor has the same ultimate objective as a party to the lawsuit. In such cases, the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption."); *see also* 6 J. Moore et. al., MOORE'S FEDERAL PRACTICE – CIVIL, § 24.03(4)(a)(ii) (Matthew Bender 3d ed. 2011).

[11]  It is NCR's understanding that the bankruptcy stay would not raise an impediment to Blockbuster joining this action if it wanted to, because NCR's claim arose only ***after*** Blockbuster filed for bankruptcy. *See In re Grossman's Inc.*, 607 F.3d 114, 122 (3d Cir. 2010) (*en banc*) ("The automatic stay is applicable only to claims that arise pre-petition, and not to claims that arose post-petition."). Indeed, the Trust's improper attempt to terminate

\* \* \* \* \*

The only issue before this Court is whether there was a lawful basis for the Trust to terminate NCR's license under the terms of the Trademark Usage License, an issue ripe for adjudication as a matter of law on the pleadings. The only relevant and indispensible parties to that declaration are Plaintiff NCR and Defendant BB 2009 Trust.

## **CONCLUSION**

WHEREFORE Plaintiff NCR respectfully requests that the Court deny Defendant's Motion to Dismiss the Complaint pursuant to Rule 12(b)(7), and grant any further relief that it deems just and proper.

---

arises from Blockbuster's post-petition asset sale to DISH. In any event, NCR would not object to intervention by Blockbuster or DISH here, provided that any intervention is coupled with protections to ensure that the matter remains in this Court, and is not used, for example, as a vehicle to attempt to move the matter to the Bankruptcy Court or any other court.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Melanie K. Sharp
Melanie K. Sharp (No. 2501)
Erika R. Caesar (No. 5143)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Phone: (302) 571-6681
Facsimile: (302) 576-3333

*Attorneys for Plaintiff*
*NCR Corporation*

Of Counsel:

LATHAM & WATKINS LLP
James E. Brandt
885 Third Avenue, Suite 1000
New York, NY 10022-4834
Phone: (212) 906-1200
Facsimile: (212) 751-4864 (fax)

Maximilian A. Grant
Michael David
555 Eleventh Street, Suite 1000
Washington, DC 20004
Phone: (202) 637-2200
Facsimile: (202) 637-2201

July 8, 2011