IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NCR Corporation, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
|   v. | )   C.A. No. 11-481 (NLH) (AMD) |
| | ) |
| BB 2009 Trust, | ) |
| | ) |
|        Defendant. | ) |

**REPLY BRIEF OF BB 2009 TRUST IN FURTHER SUPPORT OF ITS
MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO JOIN
<u>A NECESSARY AND INDISPENSIBLE PARTY</u>**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200

*Attorneys for Defendant BB 2009 Trust*

OF COUNSEL:

Paul S. Hessler
Robert H. Bell
LINKLATERS LLP
1345 Avenue of the Americas
New York, NY 10105
(212) 903-9000

July 18, 2011

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

ARGUMENT ...........................................................................................................................2

    I.    THIS ACTION SHOULD BE DISMISSED FOR FAILURE TO JOIN BLOCKBUSTER TO THIS ACTION .......................................................2

        A.    Blockbuster is a Required Party ...........................................................2

        B.    Blockbuster is an Indispensible Party....................................................5

CONCLUSION.........................................................................................................................7

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Altava Health Mktg., Ltd. v. Shortgrass, Inc.*,
   No. Civ. A H-04-873, 2005 WL 2277598 (S.D. Tex. Sept. 15, 2005) ........................................ 4

*In re Gen. Growth Props., Inc.*,
   409 B.R. 43 (Bankr. S.D.N.Y. 2009) ......................................................................................... 7

*Helzberg's Diamond Shops, Inc. v. Valley West Des Moines Shopping Center, Inc.*,
   564 F.2d 816 (8th Cir. 1977) ................................................................................................. 5-6

*Oil States Int'l, Inc. v. LTV Corp.*,
   Nos. 1:04CV2486, 1:05CV1489, 2006 WL 3022971 (N.D. Ohio Oct. 23, 2006),
   *aff'd sub nom.*, *In re LTV Steel Co.*, 253 F. App'x 535 (6th Cir. 2007) ................................... 4

**RULES AND STATUTES**

Fed. R. Civ. P. 12(b)(7) ............................................................................................................ 1, 5, 7

Fed. R. Civ. P. 19(b) ........................................................................................................................ 5

## INTRODUCTION

NCR[1] asks this Court to declare that its "use of the Trademarks is not inappropriate," and that its continued use of the Trademarks "does not constitute trademark infringement, false designation or origin, or unfair competition under the Lanham Act." (Compl. at ¶¶ 25, 28). NCR expects the Court to make these sweeping declarations regarding its rights to the Licensed Marks without examining all of the agreements or including all of the parties that directly impact NCR's rights to the Licensed Marks. Among other things, NCR would have the Court ignore the Alliance Agreement, which "establish[ed] the framework" for licensing the Licensed Marks and set forth the material terms for both the Trust Agreement *and* the License. (*See* Hessler Decl., Ex. B, at 1, 24-25, Ex. A). NCR would also have the Court proceed without Blockbuster, despite the fact that Blockbuster has terminated NCR's rights to the Licensed Marks *twice*. NCR does not, however, provide a legally persuasive reason why this Court should narrow the scope of information it receives, risk the real probability of duplicative litigation, and prejudice the Trust, Blockbuster and New Blockbuster alike, when an alternative forum, the Southern District of New York Bankruptcy Court, is readily available to hear and settle the entire matter, among all of the parties. Accordingly, the Trust respectfully requests that the Court dismiss the Complaint pursuant to Rules 12(b)(7) and 19 of the Federal Rules of Civil Procedure for failure to join Blockbuster, a necessary and indispensible party.

---

[1] Capitalized terms used herein, but not defined, shall have the same meaning as given in the Opening Brief of BB 2009 Trust In Support Of Its Motion To Dismiss The Complaint For Failure To Join A Necessary And Indispensible Party, filed on June 21, 2011 ("Opening Brief" or "Op. Br.").

## ARGUMENT

### I. THIS ACTION SHOULD BE DISMISSED FOR FAILURE TO JOIN BLOCKBUSTER TO THIS ACTION

#### A. Blockbuster is a Required Party

In its statement of facts,[2] NCR tacitly acknowledges, as it must, the interrelated nature of the agreements entered into in order to license the Blockbuster trademarks to NCR. (*See* Plaintiff NCR's Opposition to Defendant BB 2009 Trust's Motion to Dismiss ("Pl's Opp.") at 3-4) (noting that the Alliance Agreement came first, "set out [the parties] objectives," attached an initial version of the License as an exhibit, and "contemplated" the creation of the Trust). Nevertheless, NCR's arguments ignore this reality in an attempt to encourage this Court to approve its "continued use of the Trademarks," while not presenting the Court with all of the information necessary to reach a determination on that issue. (Compl. at Prayer for Relief (B)).

NCR's first argument, that declaratory relief is compelled by the four corners of the License, misses the point entirely. (*See* Pl's Opp. at 9-11). NCR would have this Court "read in context" particular portions of the License Agreement to find that its use of the Licensed Marks is appropriate, yet NCR is attempting to keep the full context of the License outside of the Court's purview. (Pl's Opp. at 10). As detailed in the Trust's Opening Brief, this full context includes, but is certainly not limited to, the Blockbuster Notice Letter, whereby Blockbuster terminated NCR's rights to the Licensed Marks under the terms of the Alliance Agreement, and the Joint Instruction Letter, whereby Blockbuster and New Blockbuster instructed the Trustee to terminate NCR's rights to the Licensed Marks. (*See* Op. Br. at 4). Even NCR concedes (despite

---

[2] It should be noted that NCR's statement of facts contains numerous extraneous facts that are wholly unsupported by the allegations made in NCR's Complaint or by the documents referenced therein. (*See* Op. Br. at 2-7). These unsupported "facts" should be granted no weight in evaluating the present motion.

its invocation of the four corners of the License) that some degree of additional information and context is required to determine whether it has continuing rights to the Licensed Marks. The Trust agrees with NCR that the "undisputedly authentic documents attached to Defendant's Motion," which includes the Alliance Agreement and the Trust Agreement, are necessary for determining NCR's rights to the Licensed Marks. (*Id.* at 9; *see also* at 1, 2, 9). However, the analysis does not end there, because the parties and parties-of-interest to those integral agreements, which include both Blockbuster and New Blockbuster, are also required.

NCR next argues that this Court can afford complete relief, asserting that (1) Blockbuster does not have contractual authority to terminate the license, and that (2) the possibility of future litigation is not sufficient to find that Blockbuster and New Blockbuster are required parties. (*Id.* at 11-14). Despite NCR's assertions to the contrary, Blockbuster *does* have contractual authority to terminate the license. Pursuant to the terms of the License Agreement, the Trust will terminate the License "if [the Trust] receives instruction from Blockbuster" to do so. (Hessler Decl., Ex. D at 2). NCR attempts to parse this language to suggest that Blockbuster's instruction is only a "prerequisite" for the Trust to terminate the license, and that the decision to terminate rests solely with the Trust. (Pl's Opp. at 12). This assertion is belied by the plain language of the Trust Agreement, which states that the "Trustee shall take direction solely from [Blockbuster] with respect to enforcement of the Trust's rights under" the License, which necessarily includes the right to terminate the license because its continued use becomes inappropriate. (Hessler Decl., Ex. C at § 4.08(a)). Indeed, NCR's rights to the Licensed Marks were terminated in precisely this fashion, with Blockbuster and New Blockbuster sending the Joint Instruction Letter on May 25, 2011, and the Trustee sending the Termination Notice to NCR the next day, May 26, 2011.

Although NCR would prefer to ignore the majority of the agreements entered into in order to grant NCR its license, Blockbuster has authority under the Trust Agreement and the Alliance Agreement to terminate NCR's License as well. Therefore, these agreements, and the parties to these agreements, must be included in a litigation designed to determine NCR's rights to the Licensed Marks.[3] To do otherwise would invite future litigation and needlessly toll judicial resources. NCR attempts to brush aside these concerns, and cites *Bank of America National Trust & Savings Association v. Hotel Rittenhouse Associates* to suggest that as long as the relief would be "meaningful" then it is appropriate to proceed. (Pl's Opp. at 13). But the Third Circuit in that case noted the strong interest of the "public in avoiding repeated lawsuits on the same essential subject matter." 844 F.2d 1050, 1054 (3d Cir. 1988). It is hard to imagine how the Trust or NCR could obtain "meaningful" relief on the question of NCR's rights to the Licensed Marks when agreements critical to the creation of the license are being deliberately excluded from this litigation, and there can be no doubt that such a course of action would contravene the public interest in avoiding repeated lawsuits. *See Altava Health Mktg., Ltd. v. Shortgrass, Inc.*, No. Civ. A H-04-873, 2005 WL 2277598, at *13 (S.D. Tex. Sept. 15, 2005) (dismissing complaint under Rule 12(b)(7) because judgment rendered in party's absence would

---

[3] NCR asserts in a footnote that "regardless" of any rights Blockbuster may have under the Alliance Agreement, it is of no consequence because that agreement was formally rejected by the bankruptcy court at Blockbuster's request on June 24, 2011. NCR's argument is unavailing, however, because one of the questions central to the resolution of NCR's rights to the Licensed Marks involves the effectiveness of Blockbuster's *May 11, 2011* termination of NCR's rights under Section 5(e)5(a) of the Alliance Agreement, which predates the rejection, and is therefore enforceable. *See, e.g., Oil States Int'l, Inc. v. LTV Corp.*, Nos. 1:04CV2486, 1:05CV1489, 1:05CV1560, 2006 WL 3022971, at *5 (N.D. Ohio Oct. 23, 2006) (noting that the rejection of an executory contract does not affect prior performance), *aff'd sub nom.*, *In re LTV Steel Co.*, 253 F. App'x 535 (6th Cir. 2007).

leave absent party open to subsequent litigation, which would render original judgment inadequate).

Finally, NCR asserts that the Trust will not be exposed to inconsistent obligations, and attempts to categorize the possibility of inconsistent obligations as "purely speculative." (Pl's Opp. at 15). Nothing could be further from the truth. As detailed above, Blockbuster has the continuing authority to direct the Trust to withdraw its approval and terminate NCR's right to use the Licensed Marks. Indeed, with the Blockbuster Notice Letter and the Joint Instruction Letter, Blockbuster has already exercised that authority *twice*. If this Court were to determine that NCR has the right to use the Licensed Marks, the Trust would immediately be confronted with inconsistent obligations. Accordingly, Blockbuster must be a party to this action so that it will also be subject to this Court's adjudication, which will minimize the real risk of inconsistent obligations.

### B. Blockbuster is an Indispensible Party

As detailed in the Trust's Opening Brief, Blockbuster satisfies Rule 19(b) and is an indispensible party such that "in equity and good conscience, the action should [not] proceed" without Blockbuster. Fed. R. Civ. P. 19(b). Again, NCR attempts to minimize the fact that the Trust, Blockbuster and New Blockbuster would likely be prejudiced by a determination of NCR's rights under the Trademark Usage License alone, because such a determination could implicate their rights and obligations under the Trust Agreement and Alliance Agreement. (Pl's Opp. at 17). NCR cites *Helzberg's Diamond Shops, Inc. v. Valley West Des Moines Shopping Center, Inc.*, 564 F.2d 816, 820 (8th Cir. 1977), to argue that a party does not become indispensible "simply because that person's rights or obligations under an *entirely separate contract* will be affected by the result of the action." (emphasis added). The facts of that case, however, are completely inapposite to the facts at issue here. There, a shopping center entered

into a lease with Helzberg's Diamond that contained a clause prohibiting the shopping center from leasing stores to more than two full line jewelry stores. *Id.* at 817. When the shopping center entered into a lease to open a fourth full line jewelry store, Helzberg's Diamond sought to enforce its lease and obtained a permanent injunction against the shopping center preventing the new store from opening. *Id.* The court rejected the shopping center's argument that the new lessee was an indispensible party, even if their rights might be affected, because their lease was "an entirely separate contract." *Id.* at 820.

The Trust Agreement and Alliance Agreement are not "entirely separate" contracts. NCR admits, as it must, that the Alliance Agreement "set out [the parties] objectives" in licensing the marks, and by its own terms, the Alliance Agreement "establish[ed] the framework under which BLOCKBUSTER-branded Vending Kiosks [would] be deployed and operated by NCR." (Pl's Opp. at 3-4; *see also* Hessler Aff. at Ex. B, 1). Furthermore, the Alliance Agreement established the material terms for both the License and the Trust Agreement. (Hessler Aff. at Ex. B, 24-25 & Ex. A). These contracts are interrelated and cannot be viewed in isolation.

In contrast to the real risk of prejudice the Trust, Blockbuster and New Blockbuster face if this case proceeds, NCR fails to articulate any harm that it would suffer if this case is dismissed. NCR concedes that the Bankruptcy Court provides an alternative forum where this case can be heard. (*See* Pl's Opp. at 18). In fact, the most that NCR asserts is that the Trust "was created specifically to ensure that Blockbuster's bankruptcy would not jeopardize NCR's rights under the Trademark Usage License," and that "the equities weigh strongly in favor of allowing this action to proceed in this Court, with or without Blockbuster." (*Id.* at 16). NCR's argument, however, goes to the merits of its case and the question of whether NCR's

continued use of the Licensed Marks is proper; it does not provide a reason why the Bankruptcy Court, as a forum, should not hear NCR's claims.  Even if the Trust was created "to safeguard and protect" NCR in the event of a subsequent Blockbuster insolvency (and NCR's selected quotations from the Trust Agreement do not show that it was), that does not prevent NCR from having *any* contact with the Bankruptcy Court, especially when that is the only forum where an indispensible party, Blockbuster, can appear.  *See In re Gen. Growth Props., Inc.*, 409 B.R. 43, 60-62 (Bankr. S.D.N.Y. 2009) (allowing the inclusion of more than one hundred bankruptcy remote entities in a Chapter 11 filing).

## CONCLUSION

For the foregoing reasons, and the reasons set forth in its Opening Brief, the Trust respectfully requests that the Court grant its motion to dismiss the Complaint pursuant to Rule 12(b)(7) and grant any further relief that the Court deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
rsmith@mnat.com
  *Attorneys for BB 2009 Trust*

OF COUNSEL:

Paul S. Hessler
Robert H. Bell
LINKLATERS LLP
1345 Avenue of the Americas
New York, NY 10105
(212) 903-9000

July 18, 2011
4380843.1

- 7 -

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2011, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to:

> Melanie K. Sharp
> Erika R. Caesar
> Young, Conaway, Stargatt & Taylor LLP

I further certify that I caused copies of the foregoing document to be served on July 18, 2011, upon the following in the manner indicated:

Melanie K. Sharp                                                                  *VIA ELECTRONIC MAIL*
Erika R. Caesar
Young, Conaway, Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

James E. Brandt                                                                    *VIA ELECTRONIC MAIL*
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4834

Maximilian A. Grant                                                              *VIA ELECTRONIC MAIL*
Michael David
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004-1304


*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)