```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF DELAWARE
```

|  |  |  |
|---|---|---|
| NCR CORPORATION, | : | Civil Action No. |
|  | : |  |
| Plaintiff, | : | 11-0481 (NLH)(AMD) |
|  | : |  |
| v. | : |  |
|  | : |  |
| BB 2009 TRUST, | : | **OPINION** |
|  | : |  |
| Defendant. | : |  |

**APPEARANCES:**

Melanie K. Sharp
Erika R. Caesar
Young, Conaway, Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

James E. Brant
Latham & Watkins LLP
885 Third Avenue, Suite 1000
New York, NY 10022

Maximilian A. Grant
Michael David
555 Eleventh Street, Suite 1000
Washington, DC 20004

   *Attorneys for plaintiff*

Rodger Dallery Smith II
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

Paul S. Hessler
Robert H. Bell
Linklaters LLP
1345 Avenue of the Americas
New York, NY 10105

   *Attorneys for defendants*

**HILLMAN, District Judge**

## I. INTRODUCTION

Presently before the Court is defendant's Federal Civil Procedure Rule 12(b)(7) motion to dismiss this declaratory judgment action because of plaintiff's failure to join an indispensable party under Rule 19. For the reasons expressed below, the parties will be ordered to provide supplemental briefing, and defendant's motion will be continued for thirty-days.

## II. BACKGROUND[1]

On March 2, 2009, plaintiff NCR Corporation entered into a Trademark Usage License ("License Agreement") with defendant BB 2009 Trust (the "Trust"), which is the owner of the trademarks "BLOCKBUSTER EXPRESS" and "BLOCKBUSTER EXPRESS & Design," for NCR's use of these marks in connection with DVD vending kiosks. The Trust had been created just a few days before through a Trust Agreement entered into between NCR, Blockbuster, Inc., and the

---

[1] For the purpose of Rule 12(b)(7), the Court accepts as true the factual allegations of the complaint. See Utility Lines Const. Services Inc. v. HOTI, Inc., 799 F. Supp. 2d 331, 337-38 (D. Del. 2011) (citing Jurimex Kommerz Transit G.M.B.H. v. Case Corp., 65 Fed. Appx. 803, 805 (3d Cir. 2003)). The Court also may consider evidence outside the complaint in conducting a Rule 19 indispensable party analysis. See Cephalon, Inc. v. Watson Pharmaceuticals, Inc., 629 F. Supp. 2d 338, 346 (D. Del. 2009).

2

Wilmington Trust Company.[2]  Under the Trust Agreement, Blockbuster conveyed all its rights to the two trademarks to the Trust so that the Trust could license the marks to NCR, and NCR could pay the Trust license fees on revenue generated from the branded kiosks.  According to NCR, such a Trust was necessary in order to protect NCR's investment in developing, marketing and operating the kiosks should Blockbuster became insolvent.[3]

During the next two years, NCR established and operated kiosks branded with the trademarks throughout the United States, while Blockbuster filed Chapter 11 Bankruptcy.[4]  As part of the bankruptcy proceedings, Blockbuster transferred substantially all of its assets to Blockbuster LLC, which is a wholly-owned, indirect subsidiary of DISH Network Corporation, and hereinafter referred to as "New Blockbuster."  That transfer included all

---

[2] The Trust Agreement is dated February 27, 2009. (Def. Ex. C at 1.)  The Trust itself arose from a provision in an "Alliance Agreement" entered into between NCR and Blockbuster on January 23, 2009 (signed by NCR on January 25th) which contemplated the Trust as a vehicle to hold and administer the marks to be used in conjunction with the vending kiosks.

[3] The Trust Agreement explains that the BB 2009 Trust was created "for the purpose of safeguard[ing] and protecting the Trademarks and preserving the rights of NCR to use the Trademarks under the terms of the Trademark Usage License and to induce NCR to make the investment that it will make in reliance of such License." (Def. Ex. C at 1.)

[4] The jointly administered Chapter 11 cases are currently pending in the United States Bankruptcy Court for the Southern District of New York.  See In re Blockbuster, Inc. et al., Case No. 10-14997.

rights, title and interests in the Trust, as well as all rights, title and interests in all of Blockbuster's trademarks. As a result, the Court "forever barred, estopped and permanently enjoined" "all persons and entities" from "asserting, prosecuting or otherwise pursuing Interests" against New Blockbuster in any way relating to Blockbuster or the trademarks at issue here. (Def Ex. F ¶¶ L,4,6.)

Thereafter, in May 2011, counsel for Blockbuster notified NCR in writing that Blockbuster had (1) determined to discontinue the use of the marks, (2) withdrew its approval and terminated NCR's license to use the marks because NCR's use of the marks had become "inappropriate" due to the bankruptcy transfer, and (3) this "inappropriate use" was incurable and NCR was to immediately cease using the marks.[5] (Def. Ex H.) Blockbuster and New Blockbuster also filed a joint instruction letter to the Trust,

---

[5] As noted previously, approximately one month before entering into the Trust Agreement in late February 2009 (which in turn led to the execution of the License Agreement between the Trust and NCR in early March), NCR and Blockbuster entered into an Alliance Agreement, which set forth the two entities' plans to deploy and market Blockbuster-branded DVD kiosks. (See Def. Ex. B.) Both the Trust Agreement and the License Agreement refer to the Alliance Agreement. (See Def. Ex. C at 1, Ex. D ¶ 15.) It was, in part, pursuant to provisions in this Alliance Agreement that Blockbuster based its authority for withdrawing its approval of NCR's use of the trademarks. (See Def. Ex. H.) The bankruptcy court, however, has approved Blockbuster's request to reject the Alliance Agreement. (See Pl. Ex. A to Reply Br, Docket No. 10.) This Court does not need to opine on the validity of Blockbuster's reliance upon the now-rejected Alliance Agreement to terminate NCR's license to use the trademarks in order to resolve the current motion.

4

instructing the Trustee to notify NCR of the termination of its license, and acknowledging that the termination would dissolve the Trust.[6] (Def. Ex. I.) The Trustee then provided NCR with written notice of the withdrawal of approval of NCR's usage of the marks and the termination of the license. (Def. Ex. J.) As per the License Agreement, NCR was to have 180 days to cease its use of the marks. (Def. Ex. D.)

NCR then filed its declaratory judgment action against the Trust, seeking a declaration that the Trust does not have the right to terminate the License Agreement and that NCR is not infringing on the Trust's trademarks. NCR contends that it did not use the marks in any way not provided for by the License Agreement or that had denigrated their value.[7] NCR also contends that it was not provided with the opportunity to cure any inappropriate use, as required by the License Agreement. Ultimately, NCR claims that no grounds exist for the termination of its license to the marks, and a termination will cause substantial hardship and irreparable harm.

In lieu of filing an answer to the complaint, the Trust

---

[6] For its part, NCR contends that dissolution of the Trust as a result of the bankruptcy would be not only contrary to the express terms of the Trust but also contrary to the very reason it was created.

[7] Indeed, NCR argues that the termination has nothing to do with its use of the mark at all but is rather a cynical and improper repudiation by the New Blockbuster of its predecessor's obligations under the various agreements.

5

filed the instant motion to dismiss NCR's complaint because of NCR's failure to join a required party--Blockbuster.  The Trust contends that Blockbuster remains a party to the Trust Agreement, and it continues to have the right to direct the Trust with respect to the enforcement of the Trust's rights under the License Agreement.  Because Blockbuster retains the right under the License Agreement to instruct the Trust to terminate the license, the Trust argues that an adjudication of NCR's rights without the participation of Blockbuster would provide hollow relief.  The Trust therefore deems Blockbuster to be an indispensable party.  Due to Blockbuster's bankruptcy, however, the Trust believes that Blockbuster is incapable of being joined because of the automatic stay entered by the bankruptcy court.  Thus, the Trust argues that NCR's complaint must be dismissed in its entirety because of the impossibility of joining Blockbuster as a required party.

In response, NCR argues that it is seeking a declaration of its rights under the License Agreement, and that the only parties to that agreement are NCR and the Trust.  NCR contends that Blockbuster is not a required party because NCR's rights under the License Agreement can be adjudicated entirely on that contract and solely between NCR and the Trust.  NCR argues that to require Blockbuster's joinder, and subject NCR to Blockbuster's bankruptcy court dealings of which NCR has no part, would subvert the very purpose of establishing the Trust and the

resulting License Agreement.

### III.  DISCUSSION

#### A. Jurisdiction

This Court has subject matter jurisdiction over NCR's declaratory judgment action pursuant to 15 U.S.C. §§ 1051, 1121(a), 28 U.S.C. § 1338(a), and 28 U.S.C. § 1332.

#### B.  Standard for 12(b)(7) and Rule 19 motions

Federal Rule of Civil Procedure 12(b)(7) allows a motion to dismiss to be filed for "failure to join a party under Rule 19." Rule 19 provides a two-step analysis.  Under Rule 19(a), the court must determine whether a party is "required to be joined if feasible."  Fed. R. Civ. P. 19(a).  If the court determines that the party should be joined but joinder is not feasible, the court moves to the second step of the analysis under Rule 19(b) to determine whether, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b) (listing four factors to consider).  If a party is not necessary under Rule 19(a), the court does not need to conduct an analysis under Rule 19(b). Kuhn Const. Co. v. Ocean and Coastal Consultants, Inc., 723 F. Supp. 2d 676, 686 (D. Del. 2010) (citing Field v. Volkswagenwerk AG, 626 F.2d 293, 300 (3d Cir. 1980)).

## IV. ANALYSIS

**1. Whether Blockbuster is a required party under Rule 19(a)**

Rule 19(a) provides:

> (a) Persons Required to Be Joined if Feasible.
>
> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (I) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Under subsection 19(a)(1)(A), the inquiry is whether complete relief can be accorded to the parties absent the unjoined party. See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 405 (3d Cir. 1993). The focus is on the parties to the action and not on the effect the decision may have on the nonparty. Id. Under subsection 19(a)(1)(B), the focus shifts from the effect on the parties to the effect of judgment on the non-party. Huber v. Taylor, 532 F.3d 237, 248

8

(3d Cir. 2008).

Under both subsections, Blockbuster is a required party.[8] NCR's main argument is that its declaratory judgment action can be adjudicated solely on the allegations in its complaint and the License Agreement it entered into with the Trust, and that Blockbuster is irrelevant to that controversy. It is clear, however, that even though Blockbuster is not a signatory to the License Agreement, Blockbuster and its actions are essential to the interpretation, validity, and scope of the License Agreement. Because the interpretation, validity, and scope of the License Agreement is exactly what NCR is asking this Court to decide in its declaratory judgment action, this case cannot proceed without Blockbuster.

Blockbuster's indispensability is demonstrated by the numerous references to Blockbuster in the License Agreement. For example, the "Grant of License" provision states, "Upon notice to [the Trust] by an authorized representative of Blockbuster that Blockbuster has timely and properly exercised its rights under Section 9.e) of the Alliance Agreement . . . NCR's license shall cease to be exclusive with respect to DVD Vending Kiosks."

---

[8]The Trust notes that because the bankruptcy court assigned to New Blockbuster all rights to the Trust and the Blockbuster trademarks, it is an indispensable party as well. The Trust represents that New Blockbuster will move to intervene in the matter should its motion to dismiss be denied. NCR questions the basis for such an intervention, and indicates it will address the merits of such a motion if New Blockbuster files it. The Court takes no position on this issue at this time.

9

(Def. Ex. D ¶ 2.)  In the "Approvals" section, the Agreement provides, "[The Trust] reserves the right to approve the final form of the usage of the Licensed Marks and may, at any time, withdraw its approval and terminate this license, effective after reasonable notice to NCR and opportunity to cure, if [the Trust] receives instruction from Blockbuster, that the use of the Licensed Marks . . . is or becomes inappropriate . . . ."  (Id. ¶ 6(a).)  The provisions regarding termination of the Agreement also involve Blockbuster: "This License may be terminated by [the Trust] . . . Upon receipt of notice from Blockbuster affirming that (I) it has terminated the Alliance Agreement pursuant to Section 9.e)2) and that such termination has not been disputed by NCR within thirty days after the notice to NCR, or (ii) if disputed, Blockbuster has been awarded the right to termination through final determination of the arbitrator under section 13.c) of the Alliance Agreement."  (Id. ¶ 14(a)(4).)  These provisions clearly show that Blockbuster has its hand in the License Agreement and the overall administration of the use of its trademarks.

Despite this, NCR has asked the Court to declare, without Blockbuster's participation, that it has not used inappropriately the trademarks or otherwise violated the terms of the License Agreement, and that it is the Trust instead that has breached the Agreement's terms.  The Court cannot do so, however, unless the Court considers Blockbuster's actions, such as through its

exercise of rights under the Alliance Agreement, or by instructing the Trust about NCR's inappropriate use of the marks. This is not to say that Blockbuster is only an important witness. The Court must consider Blockbuster's actions in the context of Blockbuster as a party because of the effect on Blockbuster's, the Trust's, and NCR's separate and competing interests.

For instance, Rule 19(a)(1)(A) makes joinder of Blockbuster required if complete relief among NCR and the Trust cannot be afforded in the absence of Blockbuster.  If, under that provision, the Court were to find, as NCR asks, that "the Trust has no grounds to terminate the License or the Agreement" (Pl. Compl. ¶ 25), it would follow that the Trust breached the License Agreement.  The Trust's actions, however, were purportedly directed by Blockbuster.  Without Blockbuster as a party to the case, the Trust does not have the ability to assert any cross-claims against Blockbuster for Blockbuster's conduct.  Thus, any judgment against the Trust would be incomplete without Blockbuster.

Moreover, if the Court were to find that the Trust breached the License Agreement, NCR would be permitted to use the marks, despite Blockbuster's right to instruct the Trust on how NCR may use those marks, and despite Blockbuster's right to determine that NCR's use has become inappropriate.  This would leave Blockbuster without the ability to protect its interests, in violation of Rule 19(a)(1)(B).  It would also subject the Trust

to inconsistent obligations--should it follow the command of Blockbuster, as required by the License Agreement, or should it follow a conflicting court order?

We conclude that because of Blockbuster's active role in the administration of the License Agreement, despite it not being a party to the Agreement, and because of the effect Blockbuster's absence from this case would have on Blockbuster, the Trust, and NCR, Blockbuster must be considered a "required party" under Rule 19(a).[9]

### 2. Whether Blockbuster can be joined under Rule 19(b)

The next step in the Rule 19 necessary party inquiry is whether it is feasible to join that required party. If not, the Court must consider several factors to determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P.

---

[9] Stated differently, the License Agreement, while a stand alone document, was not entered into in a vacuum. It was part and parcel of three separate agreements that are nonetheless inextricably intertwined: the Alliance Agreement, the Trust Agreement, and the License Agreement. The Alliance Agreement not only contemplated the additional agreements, it mandated the creation of the latter two which followed within a few short weeks; the License Agreement itself post-dates the Trust Agreement by just a few short days. In this Court's preliminary view these documents should be read *in pari materia*. To exclude Blockbuster, party to two of the agreements and an instigator of the third, would elevate form over substance. In short, and without intending to denigrate its purpose or legal status, the Trust exists merely because NCR and Blockbuster negotiated and agreed to its existence.

19(b)(1)-(4).[10]

The Trust argues that it is not feasible to join Blockbuster to this action because of the automatic stay provided in § 362 of the Bankruptcy Code, which operates to stay the commencement or continuation of any "action or proceeding" against a debtor in bankruptcy. See 11 U.S.C. § 362(a)(1). In a footnote in its opposition brief, however, NCR questions whether Blockbuster's bankruptcy court stay would apply to NCR's claim here. (Pl. Opp. at 18 n.11.) NCR cites to In re Grossman's Inc., 607 F.3d 114, 122 (3d Cir. 2010) (citing 11 U.S.C. § 362(a)(1)), which explains that the automatic stay is applicable only to stay a claim that arose pre-petition. NCR contends that Blockbuster could freely join in this case because its claim arose after Blockbuster filed for bankruptcy. The Trust's reply brief does not appear to

---

[10] It is not lost on this Court that NCR may have powerful arguments sounding in equity as to why this case may proceed in this Court even if Blockbuster may not be joined. While we have not allowed those arguments to color our judgment on the narrow issue of whether Blockbuster is a required party (because we do not view them as directly relevant to that issue), they remain an issue in the case. It would be arguably ironic for a dispute over the License Agreement to be decided, even in an ancillary proceeding, in bankruptcy court when the agreements could be read to contemplate the avoidance of that complication altogether. And to induce an investment based on a structure that promised continuity in the face of the threat of insolvency only to later revoke such a promise may be something more than an ironic breach of contract. To be clear, we resolve today only the issue of Blockbuster's status as a required party. We will seek to next address whether it is feasible to join it as contemplated by Rule 19 as seen through the lens of bankruptcy law. Then and only then can we address the outstanding issues of equity which appear to animate much of NCR's arguments as to why this forum and not the bankruptcy court is the best forum for this case.

address this issue raised in NCR's footnote.

Thus, before the Court can consider the equities of whether this suit can continue without Blockbuster, it must first be determined whether Blockbuster's bankruptcy truly prevents it from being joined here. Accordingly, the Trust is directed to provide a supplemental letter brief addressing whether NCR's claims are subject to Blockbuster's automatic stay. The Trust shall do so within 20 days from the date of this Opinion, and NCR may file a response within 15 days of the submission of the Trust's brief. No supplemental brief shall be no longer than five, double-spaced pages. The Court will issue a final decision of the Trust's motions to dismiss after consideration of the supplemental submissions.[11]

### V. CONCLUSION

For the foregoing reasons, the Court will continue the Trust's motion to dismiss for thirty days pending the submission of supplemental briefing from the parties. An order will be entered.

Date:  February 9, 2012                s/ Noel L. Hillman
                                       NOEL L. HILLMAN, U.S.D.J.
At Camden, New Jersey

---

[11]NCR states in its brief that it would not object to intervention by Blockbuster or New Blockbuster, "provided that any intervention is coupled with protections to ensure that the matter remains in this Court," and it is not used "as a vehicle to attempt to move the matter to the Bankruptcy Court or any other court." (Pl. Br. at 19 n.11.) The Court does not discourage the parties from jointly presenting a proposed plan to address the various issued raised in this Opinion or by the parties in their briefs.